IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 18, 2018 Session

## STATE EX REL. SHARON DENISE TOWNSEND v. ERIC WAYNE WILLIAMSON

**Appeal from the Juvenile Court for Shelby County**
**No. P155      Nancy P. Kessler, Special Judge**

_____

### No. W2017-01290-COA-R3-JV

_____

Appellant/Father appeals the trial court's order, charging Appellant with $23,663.54 in child support arrearage. Specifically, Appellant asserts that he is entitled to certain credits against the arrearage. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Eric Wayne Williamson, *pro se*, Chicago, Illinois, Appellant.

Herbert H. Slattery, III, Attorney General and Reporter, and Sara Ohlman, Assistant Attorney General, for the Appellee, State of Tennessee ex rel Sharon Denise Townsend.

### OPINION

### I. Background

This is the third appeal of this child support and custody case. *State of Tennessee ex rel. Townsend v. Williamson*, No. W2004-02980-COA-R3-JV, 2006 WL 1493632 (Tenn. Ct. App. June 1, 2006) ("*Williamson I*"); *State of Tennessee ex rel. Townsend v. Williamson*, No. W2006-02287-COA-R3-JV, 2007 WL 2200287 (Tenn. Ct. App. Aug. 2, 2007) ("*Williamson II*"). Facts relevant to the instant appeal are set out in *Williamson II*, to-wit:

> Appellant Eric Wayne Williamson (Mr. Williamson) and Appellee
> Sharon Townsend (Ms. Townsend) are the parents of M.A.W., born May

22, 1998. In May 2003, Mr. Williamson's parentage was established following his petition to establish parentage. The trial court awarded Mr. Williamson and Ms. Townsend joint custody, with Ms. Townsend named primary custodian, and set Mr. Williamson's child support obligation at $521 per month, payable by income assignment. Mr. Williamson was also ordered to provide medical insurance and expenses for M.A.W.

On June 4, 2003, Ms. Townsend filed a petition stating that M.A.W. had been residing with her since birth and seeking custody. This matter was docketed under number P658. On January 12, 2004, Mr. Williamson, now a resident of Missouri, filed an intervening petition for sole custody alleging a material change in circumstance. In his petition, Mr. Williamson asserted that Ms. Townsend had not provided proper supervision for M.A.W. On June 16, 2004, the juvenile referee established a visitation schedule and continued the matter.

The matter was heard by the trial court on June 16, 2004; neither party was represented by counsel. At the hearing Mr. Williamson argued that Ms. Townsend neglected M.A.W. . . . At the conclusion of the hearing, the trial court found that Mr. Williamson had not proved a change in circumstance warranting modification of custody.

Mr. Williamson filed a petition to rehear on June 17, 2004. In the meantime, on August 9, 2004, Ms. Townsend and the State Child Support Services Division filed petitions against Mr. Williamson for contempt for failure to pay medical expenses. This matter was docketed under docket number P155. On September 14, 2004, under docket number P155, Mr. Williamson filed a petition to modify child support. On September 23, Mr. Williamson filed another request for a rehearing of the custody dispute, this time under docket number P658, the docket number of the original custody modification proceeding. The trial court granted Mr. Williamson's request the same day.

On October 20, 2004, the trial court denied Mr. Williamson's petition to modify child support under docket number P155 and ordered him to be confined to the Shelby County jail "until he purges himself of contempt by paying to the Clerk of the Court the sum of $500.00, a part of the amount he is in arrears." The trial court also ordered Mr. Williamson to pay Ms. Townsend's attorney's fees in the amount of $250. However, although the order contained a stamped signature by the juvenile court judge, it included no indication that it had been filed with the clerk of the court. Mr. Williamson filed a notice of appeal of the contempt matter to this Court on November 14, 2004.

In February 2005, Mr. Williamson failed to appear at the rehearing of the custody matter docketed under number P658. The trial court therefore dismissed Mr. Williamson's petition to rehear and reaffirmed its order of June 16, 2004. Like the October 2004 order, however, this order included no indication that it had been filed with the clerk of the court.

After reviewing Mr. Williamson's notice of appeal of the matter docketed under number P155, this Court[, in **Williamson I**,] ordered Mr. Williamson to show cause why the matter should not be dismissed for lack of a final judgment. In May 2005, Mr. Williamson, now represented by counsel, filed a motion to consolidate the matters docketed under numbers P155 and P658 in the trial court. The matters were consolidated by the trial court on June 22, 2005.

On June 1, 2006, this Court[, in **Williamson I,**] dismissed the matter for lack of jurisdiction because the trial court's orders did not "bear any indicia, on their face, of entry by the clerk of the court." The trial court properly filed its order, amended certificates of service were entered, and the order became final on September 11, 2006. Oral argument was heard in this Court on July 18, 2007. We affirm the judgment of the trial court.

**Williamson II**, 2007 WL 2200287, at *1-2. In **Williamson II**, Mr. Williamson only appealed the trial court's custody determination in its September 11, 2006 order. **Williamson II**, 2007 WL 2200287, at *2 ("The sole issue presented for review is whether the trial court erred in determining that no material change in circumstance warranting the modification of child custody has occurred since the entry of the initial custody order."). Accordingly, the May 2003 order, which (under **Williamson II**) "became final on September 11, 2006," remained in effect and was not disturbed on appeal. The May 2003 order set Mr. Williamson's child support at $521 per month.

On June 11, 2007, Appellee filed a petition to modify Mr. Williamson's child support alleging that "since the entry of the last order of support there ha[d] been a significant variance between the Tennessee Child Support guidelines and the amount of child support . . . ordered, such that a modification in child support [was] justified." On October 2, 2007, Appellant Mr. Williamson filed a petition to establish his child support arrears. Specifically, Mr. Williamson's petition states that Mr. Williamson "had physical custody of [M.A.W.] from May 2003 to August 2003, May 2004 to August 2004, and May 2005 to August 2005," during which time periods Appellant allegedly "provided necessaries on behalf of said child." Based on the foregoing averments, Mr. Williamson asked the court to establish his child support arrears and to allow him a credit for necessaries provided during the time Mr. Williamson had custody of the Child. In response to Mr. Williamson's petition, on December 10, 2007, Appellee State of

Tennessee *ex rel.* Townsend, petitioned the trial court to find Mr. Williamson in contempt for his failure to pay child support in the amount of $521 per month, as set in the May 2003 order (which became final on September 11, 2006). All of these petitions were heard by the juvenile court referee on March 27, 2008. On the same day, the juvenile court approved the findings and recommendations of the referee, which were that: (1) Mr. Williamson was in contempt of court for failure to pay the $521 per month in child support; (2) Mr. Williamson would be confined to jail until he paid $500 toward his total child support arrearage; (3) Mr. Williamson's child support obligation would be decreased from $521 per month to $374 per month beginning July 1, 2007.

On May 27, 2010, Mr. Williamson filed a petition to modify child support. By order of August 23, 2010 the juvenile court magistrate denied Mr. Williamson's petition. Mr. Williamson filed a petition for hearing before the judge, which was granted. The trial court heard Mr. Williamson's petition to modify child support on October 5, 2010. By order of October 20, 2010, the juvenile court held, in relevant part, that "the previous order of this Court entered on March 27, 2008 be modified to increase child support payments by income assignment from $374 monthly to $545 monthly beginning October 1, 2010. . . ."

On October 20, 2015, Mr. Williamson filed a petition "to modify order, petition to set arrearages and for credit to arrearages," and to terminate child support (based on the child reaching majority). The magistrate heard the petition on December 1, 2015 and entered its initial findings and recommendations on January 8, 2016. The magistrate entered corrected findings and recommendations on February 1, 2016, finding, in relevant part:

> 2. That the previous order of the Court entered on October 5, 2010 be modified to decrease child support payments from $545.00 per month to $352.00 per month beginning November 1, 2015 to be paid by income assignment . . . .
>
> 3. That the child support arrears shall be paid by income assignment at the rate of $50.00 per month beginning November 1, 2015. Payment of arrears at the rate shown above is a minimum payment and does not preclude the petitioner from collecting the judgment by other means . . . .

The magistrate continued the hearing until February 23, 2016 "at the request of the State to contact the State of Illinois to determine what, if any support was paid through Illinois, and for the State of Tennessee to prepare an arrears computation." The case was further continued until May 17, 2016. Following the hearing on May 17, 2016, the magistrate entered findings and recommendations on June 8, 2016. The magistrate terminated Mr. Williamson's child support obligation, effective May 31, 2016. The magistrate further ordered that Mr. Williamson would pay his child support arrearage at a rate of $150.00 per month, beginning June 1, 2016. The court then continued that case until July 26,

2016 "for [Appellant] to provide proof of income and for the State to prepare arrears calculations including the statutory interest." The case was further continued until September 27, 2016. Following a hearing, on November 1, 2016, the magistrate entered further findings and recommendations, which include:

1. That the State advised the Court that the estimated arrears as of September 27, 2016 in their records are calculated in the amount of $30,355.00 without interest.

2. That [Mr. Williamson's attorney] . . . estimated arrears as of September 27, 2016 [to be] $24,009.00 without interest.

Due to the above discrepancy, the trial court continued the matter to allow the parties time to resolve the arrearage amount dispute. The magistrate reconvened the hearing on November 15, 2016. On November 29, 2016, the magistrate entered findings and recommendations. Specifically, the magistrate found "[t]hat child support arrears shall be reduced to a judgment in the amount of $0.00, through and including November 15, 2016." Appellee moved for hearing before the juvenile court judge, which motion was granted.

On May 12, 2017, the trial court heard the matter. Concerning the amount of Mr. Williamson's child support arrearage, the following interchange occurred at the May 12 hearing, to-wit:

THE COURT: All right, and what — what did we determine the arrears are?

THE STATE: As of today, $23,663.54. . . . That's what the parties have agreed to stipulate it to . . . .

THE COURT: Well, that—let [Appellant's attorney speak].

APPELLANT'S ATTORNEY: [$]23, 663.54?

THE STATE: Yes.

APPELLANT'S ATTORNEY: Sure.

Although, Mr. Williamson's attorney stipulated to $23,663.54 in arrears, at trial, Mr. Williamson asserted that the May 2003 order setting child support at $521 was deemed ineffective in *Williamson I*, and was not deemed final until September 11, 2016, under *Williamson II*. Accordingly, Mr. Williamson asserted that there was no valid court order on child support until September 11, 2006, thus entitling him to credit for any amounts he

- 5 -

paid, under the May 2003 order, from May 2003 until September 11, 2006. The trial court ruled that Mr. Williamson's argument was moot and that the May 2003 order was valid. In addition to the foregoing argument, Mr. Williamson also asserted that he was entitled to credit against his arrears for certain necessaries, which items were evidenced by a list Appellant created and receipts submitted as Trial Exhibits 1 and 2. Following the hearing, on June 13, 2017, the trial court held, in relevant part, as follows:

> 2. That the Magistrate's ruling entered on November [29,] 2016 is set aside.
>
> 3. The prior orders of this Court are valid orders.
>
> ***
>
> 5. That the child support arrears shall be reduced to judgment in the amount of $23,663.54, through and including May 12, 2017, not including interest which shall be added to all accrued arrears at the statutory interest rate of 1% per month, or 12% per year, pursuant to T.C.A. §36-5-101(f)(1).
>
> 6. That the child support arrears shall be paid by income assignment at the rate of $329.00 per month beginning June 1, 2017 . . . .
>
> ***
>
> 10. That the [Appellant's] request for credit for necessaries to reduce his child support arrears is denied as the items listed in [Appellant's] Exhibit 1 and Exhibit 2, failed to meet the definition of "necessaries" pursuant to Peychek v. Rutherford . . . .
>
> 11. That the [Appellant's] items listed in Exhibit 1 and Exhibit 2 prior to October 20, 2009, are barred by the statute of limitations . . . .

Mr. Williamson appeals.

## II. Issues

Appellant raises twelve issues in his brief, however, we perceive that there are three dispositive issues, which we state as follows:

1. Whether Appellant is entitled to credit against his child support arrears for amounts paid from May 2003 through September 11, 2006 under the ineffective May 2003 order on child support.

2. Whether the trial court erred in setting Appellant's child support arrearage at $23,663.54.

3. Whether the trial court erred when it denied Appellant credit for expenses for necessaries.

## III. Standard of Review

This case was tried without a jury. Therefore, we review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. Ct. App. 2008). Furthermore, while we are cognizant of the fact that Mr. Williamson is representing himself in this appeal, it is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere." ***Brown v. Christian Bros. Univ.***, 428 S.W.3d 38, 46 (Tenn. Ct. App. 2013). This Court has held that "[p]arties who choose to represent themselves are entitled to fair and equal treatment by the courts." ***Hodges v. Tenn. Att'y Gen***., 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000) (citing ***Paehler v. Union Planters Nat'l Bank, Inc***., 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)). Nevertheless, "courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." ***Young v. Barrow***, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing ***Edmundson v. Pratt***, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); ***Kaylor v. Bradley***, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995)).

## IV. Argument

### 1. Validity of the May 2003 Order

In his current appeal, Appellant argues that he is entitled to a credit against his child support arrearage for the child support he paid from 2003 through 2006 when a child support order was signed but was not yet *effective* due to mistakes by the Shelby County Juvenile Court Clerk's Office. While it is true that, in ***Williamson I***, this Court held that "none of the court orders under P155 or P658 were [f]inal or [e]ffective orders," as stated in ***Williamson II***, on remand from ***Williamson I***, the trial court corrected the clerical issues with the May 2003 order and the order "became final on September 11, 2006." Although Mr. Williamson was entitled to appeal the corrected order, the time for filing such appeal expired thirty days after September 11, 2006. Tenn. R. App. P. 4(a) ("[T]he notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from. . . ."). As noted above, in ***Williamson II,*** Mr. Williamson appealed only the issue of custody but did not appeal the amount of child support. Had Mr. Williamson appealed the order on

- 7 -

child support within thirty days of September 11, 2006, he could have raised the question of whether he was entitled to credit for amounts paid under the ineffective May 2003 order. Having failed to appeal the amount of child support within the thirty-day time period, we agree with the trial court that the issue of whether the May 2003 order required Mr. Williamson to pay child support is waived.

Nonetheless, even if we assume, *arguendo*, that this issue is appealable at this late date, and even if we go so far as to assume that there was no valid court order on child support from May 2003 until September 11, 2006, this fact, alone, does not relieve Appellant of his obligation to support the Child during this time. Tennessee Code Annotated section 36-1-102(1)(H) states that "every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children." A parent's obligation to support his or her child exists regardless of a court order requiring the parent to pay support. *In re Shandajha A. G.*, No. E2012-02579-COA-R3-PT, 2013 WL 3787594, *8 (Tenn. Ct. App. July 17, 2013). *See also In re M.A.C.*, No. M2007-01981-COA-R3-PT, 2008 WL 2787763, at *5 (Tenn. Ct. App. July 17, 2008) (citing Tenn. Code Ann. § 34-1-102(a)). As discussed by this Court in *State ex rel. Hayes v. Carter*, No. W2005-02136-COA-R3-JV, 2006 WL 2002577 (Tenn. Ct. App. July 6, 2006):

> It is well settled in Tennessee that biological parents must, as a general matter, support their children until they reach the age of majority. *See* T.C.A. § 34-1-102(a), (b) (2001); *Smith v. Gore*, 728 S.W.2d 738, 750 (Tenn. 1987). Their support obligations are joint and several, and the extent of their obligations depends on their ability to provide support. . . . The parent's obligation to support, as well as the child's right to support, exist regardless of whether a court order exists, and regardless of whether the parents were ever married.

*Id.* at *2. Accordingly, even in the absence of a valid court order on child support from May 2003 until September 11, 2006, Mr. Williamson would still be liable for child support. Accordingly, like the trial court, we conclude that Appellant's argument that he is entitled to credit against arrears for child support paid from 2003 until 2006 is unpersuasive.[1]

---

[1] Through this appeal, Appellant also attempts to re-litigate the amounts of his child support obligations throughout the years. In his brief and at oral argument, Appellant argued that the trial court was "telling [Appellant] to pay way more than [he] was making;" that it never took "into account the statutory limits of [Appellant]'s income when it set child support amounts;" and that it did not consider Appellant's wages at the time of the orders. Appellant essentially attempts to re-litigate how his prior child support obligations were calculated. While Appellant may disagree with these orders, he has not appealed them. Regardless, this Court has no power to retroactively modify a child support order. Accordingly, we will consider only those issues that were decided in the May 12, 2017 order. Any

## 2. Amount of Arrearage

As set out in context above, at the hearing on this case, Mr. Williamson's attorney stipulated to $23,663.54 in child support arrears. Having determined that Mr. Williamson is not entitled to a credit against his arrears for child support paid in the absence of a valid court order, his attorney's stipulation is binding on him. An attorney may stipulate as to virtually any matter at trial, and such stipulation is binding upon the client. ***Gordon's Transports, Inc. v. Bailey***, 294 S.W.2d 313, 329 (Tenn. Ct. App. 1956). Further, stipulations are to be enforced unless there is a showing that the stipulation is obtained by fraud or mistake. ***Phillips v. Pittsburgh Consolidated Coal Co.***, 541 S.W.2d 411 (Tenn. 1976); ***Bearman v. Camatsos***, 385 S.W.2d 91, 93 (Tenn. 1964). The only question is whether Mr. Williamson is entitled to a credit against the $23,663.54 for necessaries. We now turn to address that issue.

## 3. Credit for Necessaries

Trial courts have no authority to forgive any portion of a child support arrearage prior to the filing of a petition to modify the child support obligation. Such forgiveness constitutes an unlawful retroactive modification of a valid child support order. *See **State ex rel. Estes v. Estes***, No. E2011-01067-COA-R3-CV, 2012 WL 826595, at *4-5 (Tenn. Ct. App. Mar. 13, 2012); ***State ex rel. Whitley v. Lewis***, 244 S.W.3d 824, 829-30 (Tenn. Ct. App. 2007); ***Buettner v. Buettner***, 183 S.W.3d 354, 358 (Tenn. Ct. App. 2005); ***Brown v. Heggie***, 876 S.W.2d 98, 101 (Tenn. Ct. App. 1993).

Although a trial court may not retroactively modify a parent's support obligation, trial courts may give credit against a parent's child support arrearage where the parent provides necessaries for the child. *See **Peychek v. Rutherford***, No. W2003-01805-COA-R3-JV, 2004 WL 1269313, at *4 (Tenn. Ct. App. June 8, 2004); ***Brownyard v. Brownyard***, No. 02A01-9803-CH-00063, 1999 WL 418352 (Tenn. Ct. App. June 22, 1999); ***Hartley v. Thompson***, 01A01-9502-CV-00044, 1995 WL 296202 (Tenn. Ct. App. May 17, 1995); ***Oliver v. Oczkowicz***, No. 89-396-II, 1990 WL 64534 (Tenn. Ct. App. May 18, 1990).

"In order to maintain a successful claim for necessaries, [the parent seeking the claim] 'must prove: (1) that the child needed the particular goods or services that were provided, (2) that [Mother] had a legal obligation to provide the goods or services, (3) that [Mother] failed to provide the goods or services, and (4) the actual cost of these goods or services.'" ***Peychek***, 2004 WL 1269313 at *4. (quoting ***Hooper v. Moser***, M2001-02702-COA-R3-CV, 2003 WL 22401283, at *3 (Tenn. Ct. App. Oct. 22, 2003)). The rationale is that a credit against a child support arrearage is not a retroactive modification of support but is given in recognition "that the obligor parent provided the

---

arguments or issues regarding matters adjudicated in previous orders are specifically pretermitted.

support the court ordered in the first place." *Id.* (citing ***Netherton v. Netherton***, No. 01-A-01-9208-PB00323, 1993 WL 49556, at *2 (Tenn. Ct. App. Feb. 26, 1993)).

Turning to the record, the trial court admitted two exhibits at the hearing regarding necessaries. Exhibit 1 is a list, which Appellant created, outlining alleged expenditures Appellant made on behalf of M.A.W. The list dates back to 2003 and totals $27,690.01. The expenses include, but are not limited to, money spent on "Gasoline," "Travel," "Entertainment," "Gift," "Dining Out," "Groceries," "Medical," "Clothing," "Toiletries," "Camp," "Furniture," "Insurance" and "Summer Enrichment." Exhibit 2 contains two receipts from Walgreens. The first receipt is for $16.42 for Zyrtec. The second receipt, time stamped about 3.5 hours after the first receipt, is an "exchange receipt" totaling $0.00. Appellant alleges that he is entitled to a credit against his arrears for the expenses set out in these exhibits; because Exhibit 1 outlines expenses totaling more than the arrearage amount, Mr. Williamson ostensibly contends that he owes nothing in arrears. The trial court disagreed.

Turning to the record, the trial court limited its review of "necessaries" to items listed after October 20, 2009, and subsequently denied Appellant's request for credit. Citing two of this Court's opinions, ***Martin v. Martin***, No. W2014-01007-COA-R3-CV, 2015 WL 2400583, at *6 (Tenn. Ct. App. May 20, 2015) and ***Hooper***, 2003 WL 22401283, at *4, the trial court determined that the statute of limitations barred review of "necessaries" provided more than six years prior. We have previously determined that lawsuits seeking credit for payment of "necessaries" must be commenced within six years after the necessaries are provided because such suits sound in contract. ***Hooper***, 2003 WL 22401283, at *4; *see also* Tenn. Code Ann. § 28-3-109(a)(3). Therefore, we conclude that the trial court correctly denied any "necessaries" purchased more than six years prior to the trial court's review.

Under ***Peychek***, 2004 WL 1269313, the trial court determined that the items that were purchased within the six year time limit (and so could still be considered by the trial court) failed to meet the definition of necessaries. Specifically, the trial court found that "[Mother] testified she provided clothing, shoes, medication, and necessaries for the child. The items claimed by [Appellant] on Exhibits 1 and 2 were not necessaries which [Mother] had a legal right to provide and failed to provide."

We agree with the trial court that the items on Exhibits 1 and 2 were not necessaries because Mother provided M.A.W. with the goods and services she had a legal obligation to provide. She testified that she provided M.A.W. with appropriate housing, transportation, and attended to his medical needs. Mother also testified that when M.A.W. would visit his father during the summer she would pack his suitcase with "things he needed for the summer - - the swimming suits, shorts, all those necessities - - toothbrush, hairbrush, all those things." Regarding clothing and other necessaries, Mother stated:

- 10 -

Q: . . . Now, would your son come back from the visits with the clothing that his father had purchased for him during the summer?

A: Yes, he would purchase things for him for the summer, yes.

Q: Okay. And were those things enough to - - enough to meet his clothing needs for the entire rest of the school year, for instance?

A: No. You're talking about a child[.] [T]hey're constantly growing, they're constantly changing.

Q: Yes, ma'am.

A: I mean, my son started high school. He would go from a size 36 to a 32 because he's playing in the band, and he dropped so much weight, you know, so we had to buy a whole new wardrobe, you know, so things like that.

***

Q: Okay. Did you ever call Mr. Williamson and ask him to purchase the clothing because you couldn't purchase the clothing?

A: No.

Q: . . . [D]id Mr. Williamson ever call you while the child was there for the summer?

A: No.

Appellant failed to meet his burden to show that M.A.W. needed the goods or services Appellant provided in Exhibits 1 and 2. Furthermore, Appellant did not show that Mother failed to provide M.A.W. with the goods or services that she had a legal obligation to provide. Accordingly, Mr. Williamson is not entitled to credit.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Eric Wayne Williamson and his surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE